**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**THOMAS R. BREEDEN,**

        **Plaintiff,**

**v.**                                     **Civil No.  3:11-cv-00263-JRS**

**TRANS UNION, LLC,**

        **Defendant.**

**DEFENDANT TRANS UNION LLC'S
MEMORANDUM IN SUPPORT OF
<u>RULE 56 MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Trans Union LLC ("Trans Union"), by counsel, submits its Memorandum in Support of its Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure.

**I.**      **<u>INTRODUCTION</u>**

Plaintiff Thomas R. Breeden ("Plaintiff") contends, in separate lawsuits before this Court, that Trans Union delivered a credit report regarding him to T-Mobile USA, Inc./T-Mobile, Northwest, LLC ("T-Mobile") on April 29, 2009, even though he had not applied for credit with T-Mobile.  On that date, T-Mobile requested the credit report of an individual whose name and address exactly matched the name and address of Plaintiff.  Trans Union delivered that report to T-Mobile.  There is no allegation that any individual pretending to be Plaintiff, or any one other than T-Mobile, saw his credit report.  Plaintiff does not allege that a T-Mobile account was fraudulently opened in his name; indeed, Plaintiff does not allege any harm from the delivery of his credit report to T-Mobile more than two years ago.

Nonetheless, Plaintiff now sues Trans Union for "willful" violations of federal law, and seeks an award of statutory damages, punitive damages and attorneys' fees.  Because Trans

Union had the requisite "reason to believe" that T-Mobile had a permissible purpose to obtain Plaintiff's report, and had implemented procedures designed to ensure the delivery of credit reports only for permissible purposes, both counts of the two-count complaint should be dismissed.  Alternatively, given the existence of case law and Federal Trade Commission guidance which directly supports Trans Union's view that it complied with the law, Plaintiff's claims for any willful violation of federal statute should be dismissed.

A.     **The Fair Credit Reporting Act.**

Plaintiff alleges that Trans Union violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").  The FCRA governs, inter alia, the communication of consumer credit history information, or "consumer reports" (commonly called "credit reports"), to third parties (also called "end users") by a consumer reporting agency ("CRA").  15 U.S.C. §§ 1681a(d), (f). Trans Union is a CRA.  15 U.S.C. § 1681a(f).

In order for a CRA to provide credit reports to an end user for a credit eligibility or other decision, the CRA must have "reason to believe" that the end user "intends to use" the credit reports for such an eligibility purpose, also called a "permissible purpose."  15 U.S.C. § 1681b(a).  The FCRA separately sets forth the procedures by which a CRA, like Trans Union, can possess the requisite "reason to believe" that an end user has a permissible purpose for a particular credit report:

> Every consumer reporting agency shall maintain reasonable procedures designed to … limit the furnishing of consumer reports to the [permissible] purposes listed [in the FCRA].  These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.  Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report.

15 U.S.C. § 1681e(a) (emphasis added).  "No consumer reporting agency may furnish a consumer report to any person if it has <u>reasonable grounds for believing</u> that the consumer report will <u>not</u> be used for a [permissible purpose]."  15 U.S.C. § 1681e(a) (emphasis added).

The FCRA also imposes corresponding requirements on end users that further serve to establish a CRA's "reason to believe" that an end user who makes the required certification has a permissible purpose to receive FCRA data.  The end user must have a permissible purpose for requesting the credit report, and must certify its permissible purpose to the CRA to obtain and use the credit report.  15 U.S.C. § 1681b(f).  Moreover, the FCRA imposes criminal penalties on end users who obtain information from a CRA under a certification made under false pretenses.  15 U.S.C. § 1681q.

**B.     Complaint and Procedural History.**

Plaintiff's Complaint is based on a single factual allegation: "On or about April 25, 2009, Defendant [sic], T-Mobile obtained [from Trans Union] and used the Plaintiff's consumer report without a permissible purpose to do so."  (Compl., ECF No. 1, ¶ 9.)  Based on this core allegation, Plaintiff asserts two claims against Trans Union.[1]

First, by Count I, Plaintiff alleges that Trans Union violated 15 U.S.C. § 1681b(a) by furnishing his credit report to T-Mobile even though Trans Union did not have a "reason to believe" T-Mobile had a permissible purpose to obtain that report.  (Compl., ECF No. 1, ¶¶ 21-24.)  Plaintiff asserts that Trans Union's violation of 15 U.S.C. § 1681b(a) was a "willful" violation of the statute, thereby entitling Plaintiff to recover statutory damages, punitive

---

[1] Trans Union is the only defendant in this lawsuit.  T-Mobile Northeast, LLC, however, is a defendant in another case brought by the Plaintiff based on the same core factual allegation, and that case is also pending before this Court.  <u>See</u> <u>Breeden v. T-Mobile Northeast, LLC</u>, Case No. 3:11-cv-00262-JRS.

damages, costs, and attorney's fees from Trans Union under 15 U.S.C. § 1681n.  (Compl., ECF No. 1, ¶¶ 23-24.)

Second, by Count II, Plaintiff alleges that Trans Union violated 15 U.S.C. § 1681e(a) "by providing Plaintiff's credit report to T-Mobile without reasonable procedures to assume [sic] the proper use and lawful purpose for such reports [sic.]."  (Compl., ECF No. 1, ¶ 26; see also id. ¶¶ 25-28.)  Plaintiff also asserts that Trans Union's violation was willful, thereby entitling Plaintiff to statutory damages, punitive damages, and attorney's fees.  (Compl., ECF No. 1, ¶¶ 27-28.)  Alternatively, Plaintiff asserts that Trans Union's violation of 15 U.S.C. § 1681e(a) was a negligent violation entitling Plaintiff to recover actual damages, costs, and attorney's fees from Trans Union under 15 U.S.C. § 1681o.  (Compl., ECF No. 1, ¶¶ 27-28.)

Plaintiff originally brought his claims on behalf of a purported class of consumers. (Compl., ECF No. 1, ¶¶ 13-20.)  On July 22, 2011, this Court struck the class allegations based on the agreement of Trans Union and Plaintiff.  (ECF No. 17.)  Thus, Plaintiff's two related claims are now asserted against Trans Union on only an individual basis.

**C.    Legal Standard for Summary Judgment.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant does so, the burden shifts to the nonmovant to show, by affidavit or otherwise, that a genuine issue of material fact remains for the factfinder to resolve.  Id. at 323.

As he has the ultimate burden of proof, Plaintiff must now come forward with evidence to support his claims: "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).  This is not a light burden, but rather one which mirrors Plaintiff's burden should this case proceed to trial: "a ruling on a motion for summary judgment … necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.  …  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252; see also Panzetta v. Food Lion, LLC, 2011 WL 4073299, at *1-2 (E.D. Va. Sept. 13, 2011) (Spencer, J.) (citing Anderson and Celotex for the governing standard for summary judgment under Rule 56).  Plaintiff cannot meet this burden.

## II.    LOCAL RULE 56(B) LISTING OF UNDISPUTED FACTS

1.    By the Complaint, Plaintiff alleges that "T-Mobile obtained and used the Plaintiff's consumer report without a permissible purpose" because "Plaintiff did not have an account with T-Mobile and did not make an application to T-Mobile."  (Compl., ECF No. 1, ¶¶ 9-10.)

2.    In the Complaint, Plaintiff does not allege that he was harmed or otherwise suffered any damages as a result of Trans Union's actions.  (Compl., ECF No. 1, passim.)

3.    On or about  August 26, 2008, Trans Union entered into a TransUnion Master Agreement for Consumer Reporting and Ancillary Services (the "MSA") with T-Mobile USA, Inc.  (TU 1-20 (attached as Ex. A); Decl. of Janet Lynn Quinn ¶¶ 4-6 (attached as Ex. B).)

4.      By the MSA, T-Mobile certified to Trans Union that T-Mobile's business was "Communications."  (MSA § 2(r), TU 1.)

5.      The MSA specifically identities the FCRA's criminal penalties of T-Mobile falsely certifying to Trans Union the purposes for which T-Mobile requests credit reports.  (MSA § 3.2, TU 1.)

6.      In the MSA, T-Mobile "certifies that it shall request Consumer Report Information … solely for the permissible purpose(s) that are indicated by [T-Mobile]" in the MSA "and for no other purpose."  (MSA § 3.3, TU 1.)

7.      By the MSA, T-Mobile certified that it would only request credit reports from Trans Union for only certain enumerated permissible purposes, including:

> In connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer.
>
> \*      \*      \*
>
> To use the information in connection with Subscriber's legitimate business need for the information in connection with a business transaction that is initiated by a consumer.

(MSA § 3.4, TU 2.)

8.      On April 25, 2009, T-Mobile submitted a request to Trans Union for consumer credit information and with that request provided the following identifying information: "Thomas R. Breeden," with an address of "7900 Sudley, Suite 600, Manassas, VA 20109-2806," a Social Security Number of "████," and a date of birth of "████, 1969" (the "T-Mobile Inquiry").  (Decl. of Lynn S. Romanowski ("Romanowski Decl.") ¶¶ 4-5 (attached as Ex C).)[2]

---

[2] In Trans Union's statement of undisputed facts, as well as in the attached declaration, Trans Union has redacted the Social Security number provided by T-Mobile as well as the exact date of birth provided by T-Mobile pursuant to Local Rule 7(c)(1) and Fed. R. Civ. P. 5.2(a).

9.      In response to the T-Mobile Inquiry, Trans Union returned on April 25, 2009, a credit report to T-Mobile that the plaintiff in this case, Thomas R. Breeden, contends was a credit report relating to him.  (Romanowski Decl. ¶ 6.)

10.     On April 25, 2009, Trans Union's file of consumer credit information relating to Plaintiff contained the full name "Thomas R. Breeden," and included a "7900 Sudley, Manassas, VA 20109" address as one of Plaintiff's addresses.  (Romanowski Decl. ¶¶ 6-8.)

11.     The address in Trans Union's file had a suite number of "301."  (Romanowski Decl. ¶¶ 6-8.)

12.     For purposes of matching files to the information supplied in connection with inquiries, Trans Union does not consider suite numbers.  (Romanowski Decl. ¶¶ 6-8.)

13.     On April 25, 2009, the  first name, middle initial, and last name contained in Trans Union's file relating to Plaintiff were an exact match for the first name, middle initial, and last name of "Thomas R Breeden" provided by T-Mobile in the T-Mobile Inquiry. (Romanowski Decl. ¶ 9.)

14.     On April 25, 2009, one of the addresses in Trans Union's file for Plaintiff was an exact match for the 7900 Sudley, Manassas, VA 20109 address provided by T-Mobile in the T-Mobile Inquiry.  (Romanowski Decl. ¶ 10.)

15.     The date of birth contained in Trans Union's file for Plaintiff was within three years of the date of birth provided by T-Mobile in the T-Mobile Inquiry.  (Romanowski Decl. ¶ 11.)

16.     The difference between the date of birth provided by T-Mobile in the T-Mobile Inquiry and the date of birth contained in Trans Union's file for Plaintiff indicated that it was highly unlikely that T-Mobile sought consumer credit information regarding another individual

7

with the same name and address but who was the parent ("Sr.") or child ("Jr.") of the other individual (i.e., "generational difference").  (Romanowski Decl. ¶ 12.)

17.     The correlation between the date of birth provided by T-Mobile and the date of birth in Trans Union's file for Plaintiff thus ruled out the possibility that two individuals with similar names lived at the same address and only had a generational difference.  (Romanowski Decl. ¶ 12.)

18.     Because of the exact match between the first name, middle initial, and last name "Thomas R. Breeden," the exact match on the 7900 Sudley, Manassas, VA 20109 address, and the date-of-birth correlation, Trans Union returned the Plaintiff's credit report to T-Mobile in response to the T-Mobile Inquiry.  (Romanowski Decl. ¶ 13.)

19.     At the time of the T-Mobile Inquiry, no other file in Trans Union's database contained the Social Security number provided by T-Mobile.  (Romanowski Decl. ¶ 14.)

20.     At or about the time of the T-Mobile Inquiry, there were no other files in Trans Union's database identifying a consumer with an address in Manassas, VA, and the name "Thomas R. Breeden" or "Thomas Breeden" (with no middle name or initial).  (Romanowski Decl. ¶ 15.)

21.     Therefore, at the time of the T-Mobile Inquiry, Trans Union's file for Plaintiff was the best matching file for the input information provided by T-Mobile.  (Romanowski Decl. ¶ 15.)

22.     If T-Mobile had provided Trans Union with a name that did not match the Plaintiff's name as reflected in Trans Union's file—including first name, middle initial, and last name—Trans Union would <u>not</u> have returned Plaintiff's credit report to T-Mobile in response to the T-Mobile Inquiry.  (Romanowski Decl. ¶ 16.)

23.     If T-Mobile had provided a middle name or initial that did not match the middle initial in Trans Union's database, Trans Union would <u>not</u> have returned Plaintiff's credit report to T-Mobile in response to the T-Mobile Inquiry.  (Romanowski Decl. ¶ 16.)

24.     Had T-Mobile not provided Trans Union with the 7900 Sudley, Manassas, VA 20109 address that was an exact match for an address in Trans Union's file for Plaintiff, Trans Union would <u>not</u> have returned Plaintiff's credit report to T-Mobile in response to the T-Mobile Inquiry.  (Romanowski Decl. ¶ 17.)

25.     If the date of birth provided by T-Mobile in the T-Mobile Inquiry had indicated a generational difference between Plaintiff and the consumer whose report T-Mobile had requested, Trans Union would <u>not</u> have returned Plaintiff's credit report to T-Mobile in response to the T-Mobile Inquiry.  (Romanowski Decl. ¶ 18.)

26.     Trans Union does not require in all circumstances that a Social Security number provided as part of an inquiry match the Social Security number of the consumer whose file is returned in response to the inquiry input because of the propensity for errors in providing a correct nine-digit Social Security number by the creditor or the consumer applying for credit. (Romanowski Decl. ¶ 19.)

27.     When Trans Union attempts to match a Social Security number in its files with one provided as part of an inquiry, the transposition by the end user or consumer of two digits in the entry of the nine-digit Social Security number will prohibit an exact match.  (Romanowski Decl. ¶ 19.)

28.     When Trans Union attempts to match a Social Security number in its files with one provided as part of an inquiry, the addition by the end user or consumer of an extra digit (due

to a typographical error or the accidental pressing of two numbers [1 and 2] instead of one [2])

will prohibit a match.  (Romanowski Decl. ¶ 19.)

29.     When Trans Union attempts to match a Social Security number in its files with

one provided as part of an inquiry, the omission by the end user or consumer of a digit at the

beginning of the Social Security number will prohibit a match.  (Romanowski Decl. ¶ 19.)

30.     When an application for credit involves spouses or joint applicants, the creditor

may inadvertently switch the Social Security numbers or the applicants may inadvertently

provide an incorrect, or their co-applicant's, Social Security number, which prohibits a match

when Trans Union attempts to match a Social Security number in its files with one provided as

part of an inquiry.  (Romanowski Decl. ¶ 19.)

31.     Poor handwriting on applications may cause the submission of an incorrect Social

Security number to Trans Union, which prohibits a match when Trans Union attempts to match a

Social Security number in its files with one provided as part of an inquiry.  (Romanowski Decl. ¶

19.)

32.     In the Fair and Accurate Credit Transactions Act of 2003, Pub. L. 108-159, 117

Stat. 1952 (Dec. 4, 2003) ("FACTA"), Congress ordered the Federal Trade Commission ("FTC")

to study whether the FCRA should require an exact Social Security number match before a CRA

provides a credit report to an end user.  FACTA, § 318(a)(2)(A)(ii)-(iii), 117 Stat. 1998.

33.     After examining CRAs' procedures for matching files to inquiries, the FTC

provided the required report to Congress.  Report to Congress Under Sections 318 and 319 of the

Fair and Accurate Credit Transactions Act of 2003 (Fed. Trade Comm'n, Dec. 2004) (the "FTC

Report").

34.     In its report to Congress, the FTC declined to recommend that the FCRA require CRAs to match Social Security numbers when providing credit reports in response to inquiries. FTC Report at 55.

35.     On August 16, 2010, in response to a request submitted by Plaintiff through an automated system, Trans Union provided Plaintiff with a consumer file disclosure that disclosed to Plaintiff that Trans Union had provided Plaintiff's credit report to T-Mobile on April 25, 2009. (Romanowski Decl. ¶¶ 20-22.)

36.     The only contact between Plaintiff and Trans Union's Consumer Relations Department after April 25, 2009, is the August 16, 2010 request made by Plaintiff through an automated system for a copy of his Trans Union file disclosure.  (Romanowski Decl. ¶ 23.)

37.     Plaintiff never contacted Trans Union to question or dispute the propriety of the T-Mobile Inquiry.  (Romanowski Decl. ¶ 23.)

## III.   ARGUMENT

### A.    Count I Should Be Dismissed Because Trans Union Had The Requisite "Reason To Believe" T-Mobile Had A Permissible Purpose.

The FCRA does not impose strict liability upon Trans Union if it furnishes a credit report to an end user who does not have a permissible purpose.  Rather, to comply with the FCRA Trans Union must only have "reason to believe" that the end user has a permissible purpose, 15 U.S.C. § 1681b(a)(3).  Indeed, a credit bureau like Trans Union is only prohibited from furnishing a requested credit report if it "**has reasonable grounds for believing** that the consumer report will <u>not</u> be used for a [permissible purpose]," 15 U.S.C. § 1681e(a) (emphasis added).  Therefore, under § 1681b, Trans Union "is only liable if it furnished the credit information to [the end user] without 'reason to believe' [the end user] was accessing the

information for a permissible purpose."  Harris v. Database Mgmt. & Mktg., Inc., 609 F. Supp. 2d 509, 514 (D. Md. 2009).

> In interpreting Section 1681b, courts have found that a consumer reporting agency had 'reason to believe' that consumer reports were being accessed for a permissible purpose when the subscriber had certified such limited usage, the primary purpose of the subscriber's business involved accessing reports for a permissible purpose, and the agency was unaware of any impermissible use by the subscriber.

Harris, 609 F. Supp. 2d at 515 (citations omitted)

Given this minimal proof needed for a consumer reporting agency to establish its "reason to believe," courts have routinely granted summary judgment to defendants sued for § 1681b violations, even where the corresponding end user is found to have violated the law by obtaining the report in question.  Harris, 609 F.Supp. 2d at 514 (granting summary judgment in favor of CRA on claim for violation of 15 U.S.C. § 1681b), Hernandez v. Lamboy Furniture, Inc., 2008 WL 4061344, at *10 (E.D. Pa. Sept. 2, 2008) (granting summary judgment in favor of CRA even when end user lacked purpose for credit report); Wilson v. Sessoms, 1998 WL 35305548, at *4 (M.D. N.C. Mar. 16, 1998) (granting summary judgment to CRA that relied on end user's certification even when end user lacked permissible purpose to obtain credit report), Boothe v. TRW Credit Data, 557 F. Supp. 66, 71 (S.D.N.Y. 1982) (finding end user liable for obtaining credit report without permissible purpose but finding CRA did not violate FCRA by providing credit report), Klapper v. Shapiro, 586 N.Y.S.2d 846, 850 (Sup. Ct. 1992) (finding end user liable for obtaining credit report without permissible purpose but granting summary judgment in favor of CRA); see also Enoch v. Dahle/Meyer Imports, L.L.C., 2007 WL 4106264, at *4-5 (D. Utah Nov. 16, 2007) (granting summary judgment to CRA that relied on end user's certification of permissible purpose); Dobson v. Holloway, 828 F. Supp. 975, 977 (M.D. Ga. 1993) (same).

There is no doubt that Trans Union had "reason to believe" that T-Mobile requested Plaintiff's credit report for a permissible purpose. T-Mobile certified to Trans Union that it would only request credit reports for consumer credit and related transactions. (See supra ¶¶ II.3-7.) Trans Union relied on that certification in part because T-Mobile also has an independent duty under the FCRA to certify that it will only request credit reports for permissible purposes. 15 U.S.C. § 1681b(f). As T-Mobile acknowledged in its contract with Trans Union, it made the certification to Trans Union pursuant to the criminal "false pretense" provision of the FCRA. 15 U.S.C. § 1681q. (See supra ¶ II.5.)

Under these circumstances, Trans Union is entitled to rely on T-Mobile's certification of permissible purpose. "It is reasonable for a consumer reporting agency to assume that the user of its services will utilize the credit information obtained for a proper purpose." Anderson v. Ray Brandt Nissan, Inc., 1991 WL 211627, at *1 (E.D. La. Oct. 8, 1991) (granting summary judgment to CRA). Moreover, Trans Union's "reason to believe" was supported by T-Mobile's business operations. There is no question that T-Mobile's business involves the extension of credit to consumer, and thus T-Mobile generally has permissible purposes to obtain credit reports. See Murray v. New Cingular Wireless Services, Inc., 523 F.3d 719, 722 & 727 (7th Cir. 2008) (holding that an offer for a free phone combined with cellular service was an offer of "credit" under the FCRA, and therefore the cellular service company had a permissible purpose to obtain credit reports). (See also supra ¶ II.5.) Therefore, because T-Mobile's business routinely involved the extension of credit and a corresponding legitimate need for credit reports, Trans Union "had reason to believe" that T-Mobile had a permissible purpose. Harris, 609 F. Supp. 2d at 515 (business of end user provides CRA "reason to believe" end user has a permissible purpose for credit reports).

Absent evidence from the Plaintiff that Trans Union should have known T-Mobile did not have a permissible purpose to obtain Plaintiff's credit report, Plaintiff cannot defeat summary judgment.  Under the FCRA, "before ruling that a blanket certification is insufficient, courts consistently require evidence that the consumer credit reporting agency should have known that the report was requested for an impermissible purpose."  Enoch, 2007 WL 4106264, at *4-5 (granting summary judgment to CRA that relied on a blanket certification, and citing Davis and Boothe).  Here, Plaintiffs' Complaint does not allege that Trans Union had some reason to question T-Mobile's permissible purpose on April 29, 2009.  Nor does Plaintiffs' Rule 26 Initial Disclosures (copy attached as Ex. D) suggest that Plaintiff will seek to present such evidence.[3] Therefore, T-Mobile's general contractual certification of permissible purpose gave Trans Union "reason to believe" that T-Mobile had a permissible purpose.

**B.      The Return Of Plaintiff's Report To T-Mobile Did Not Violate The FCRA.**

The focus of Plaintiff's Complaint is whether T-Mobile had a permissible purpose when it obtained his credit report on April 25, 2009.  (See, e.g., Compl., ECF No. 1, ¶ 9 ("T-Mobile obtained and used the Plaintiff's consumer report without a permissible purpose to do so").) However, regardless of the answer to that question, under the circumstances here Trans Union clearly had "reason to believe" T-Mobile had a permissible purpose.  To the extent that Plaintiff claims that Trans Union returned the wrong consumer's credit report to T-Mobile (i.e., that T-Mobile requested a different individual's credit report but received Plaintiff's instead), that claim also fails.  Under 15 U.S.C. §§ 1681b, Trans Union only needed "reason to believe" that T-Mobile requested a credit report of the Plaintiff.  15 U.S.C. §§ 1681b(a)(3)(A), (a)(3)(F)(i).

---

[3]  On September 6, 2011, Trans Union propounded interrogatories and document requests to Plaintiff.  Plaintiff did not serve any objections to those discovery requests under Local Rule 26(C).  Trans Union has not yet received the responses to those requests as of the filing of this memorandum (although such responses are not yet overdue).

Although noted nowhere in the Complaint or Plaintiff's Rule 26 Disclosures, Plaintiff's (draft) Rule 30(b)(6) Notice and related discussions with Plaintiff's counsel suggest a new theory by Plaintiff, based upon the lack of an <u>exact</u> match on <u>all</u> identifying information between that of the T-Mobile Inquiry and Plaintiff's credit report.  In order to initially identify all potential arguments against summary judgment, Trans Union will address the issue here.

It is clear, however, that Trans Union also had more than ample "reason to believe" that T-Mobile requested Plaintiff's credit report on April 25, 2009.  T-Mobile provided Trans Union with the Plaintiff's exact name, "Thomas R. Breeden," as well as Plaintiff's address in Manassas, VA.  (<u>See supra</u> ¶ II.8.)  Plaintiff's file was the only file in Trans Union's database of consumer credit information for a "Thomas R. Breeden" in Manassas, VA, and thus was the best matching file in Trans Union's database based on the indicative information provided by T-Mobile.  (<u>See</u> <u>supra</u> ¶¶ II.9-21.)  Under these circumstances, Trans Union clearly had "reason to believe" that T-Mobile had requested Plaintiff's credit report on April 25, 2009.  The fact that the identifying Social Security number ("SSN") in the T-Mobile Inquiry did not match the corresponding information in Plaintiff's credit report did not undermine Trans Union's "reason to believe" that T-Mobile had requested Plaintiff's credit report.

Particularly instructive is the decision in <u>Crabill v. Trans Union, L.L.C.</u>, 259 F.3d 662 (7th Cir. 2001).  In <u>Crabill</u>, the plaintiff challenged Trans Union's delivery to an end user of the file of his brother, who had similar but not identical identifiers as the plaintiff.  Most notably here, the SSNs in the two files were similar but not the same.  <u>Id</u>. at 663.  In explaining its file-matching logic in that case, Trans Union made the same arguments made here.

> But Trans Union defends its program, pointing out that two files with similar although not identical identifying data may actually be referring to the same person, the differences in data being the result of errors in data collection or compilation.

Id.  Trans Union similarly explains here why it returned Plaintiff's file although it did not match

the SSN in the T-Mobile Inquiry.  (See supra ¶¶ II.16-18, 22-31.)  The Seventh Circuit wholly

agreed with Trans Union's justification for its file-matching logic, and held that the FCRA "does

not require a credit agency to disregard the possibility that similar files refer to the same person."

Crabill, 259 F.3d at 663.  Therefore, the Seventh Circuit held, "Trans Union was entitled to

program its computer to select any file whose identifiers closely match those contained in the

creditor's request for information."  Id. at 664.[4]

Also directly relevant is the decision in Dobson v. Holloway, 828 F. Supp. 975 (M.D. Ga.

1993).  There, as here, the plaintiff sued a credit bureau for delivering his credit report to a

creditor that was considering the application of someone other than the plaintiff.  The Dobson

court expressly held that the delivery of plaintiff's file that only partially matched the name in

the corresponding inquiry, and did not match the Social Security number ("SSN"), did not

violate the FCRA.  Id. at 977.  In that case, an end user requested a credit report on "Kenneth D.

Dobson" with an address on Willow and an SSN of "XXX-XX-XXXX."  In response, the CRA

"used a 'weighted value' system to match up the information provided by [the end user] to those

files it deemed most likely to be a match" and provided 3 credit reports, two of which related to

the correct Kenneth D. Dobson.  The third report, however, related to the consumer's father,

"Kenneth V. Dobson," who had a different SSN, middle initial and address than the one provided

by the end user.  Id.

---

[4]  The Seventh Circuit in Crabill stated that the reasonableness of Trans Union's procedures only became a factual
issue once Trans Union learned that the return of the file of plaintiff's brother was erroneous but continued to report
the file.  259 F.3d at 664.  Here, however, there is no evidence (or allegation) that Trans Union was made aware of a
problem with the return of Plaintiff's file prior to April 29, 2009.  (See supra ¶¶ II.35-37.)

Under these circumstances, the court not only found no FCRA violation, but also rejected the argument that the mismatch as to SSN prevent the CRA from returning the father's credit report to the end user:

> Based on the foregoing, the court finds that the Credit Bureau maintained and followed reasonable procedures to limit the furnishing of consumer reports to the purposes listed under § 1681b. The court cannot think of a more reasonable method that could have been used under these circumstances.
>
> Nonetheless, plaintiffs argue that no file containing a different social security number should ever be produced. However, this would be too limiting as social security numbers are sometimes transposed or are erroneous. Moreover, if the computer search stopped with the social security number, valuable credit histories on individual consumers that have been reported under different social security numbers would not be reported to users. Thus, the computer search does not stop with the social security number, but looks at names, addresses, and other information in order to find a match.

Id. Accordingly, the Dobson court granted summary judgment in favor of the CRA. Id. at 977-78.

Here, Trans Union required an even stricter match of indicative information in the inquiry and Plaintiff's file than the matching found FCRA-compliant in Dobson. Here, the two files had exact-match in name and address. Moreover, Trans Union would not have provided Plaintiff's credit report to T-Mobile had there been a mismatch of middle initials, as in Dobson. (See supra ¶¶ II.22-25) Thus, Trans Union's delivery of Plaintiff's credit report to T-Mobile complied with the FCRA.

Also instructive is the conclusions on the topic reached by the Federal Trade Commission at the direction of Congress. Pursuant to the specific request of Congress, the Federal Trade Commission ("FTC") has expressly considered whether the FCRA requires CRAs to only return those files which exactly match the SSN of the inquiry. The FTC, charged with enforcing the

17

FCRA as to credit bureaus, concluded that the statute does not require such stringent match logic.

By the Fair and Accurate Credit Transactions Act of 2003, Pub. L. 108-159, 117 Stat. 1952 (Dec. 4, 2003) ("FACTA"), which amended the FCRA, Congress ordered the FTC to study the issue currently before this Court:

> [The FTC shall study and report to Congress about] the efficacy of increasing the number of points of identifying information that a credit reporting agency is required to match to ensure that a consumer is the correct individual to whom a consumer report relates before releasing a consumer report to a user, including—
>
> \*   \*   \*
>
> (ii) the extent to which requiring an exact match of the first and last name, social security number, and address and ZIP Code of the consumer would enhance the likelihood of increasing credit report accuracy; and
>
> (iii) the effects of allowing consumer reporting agencies to use partial matches of social security numbers and name recognition software on the accuracy of credit reports …

FACTA, § 318(a)(2)(A)(ii)-(iii), 117 Stat. 1998.

In preparing its report, the FTC obtained information from the CRAs about their matching procedures and learned that CRAs do not require end users to submit SSNs with every inquiry and that many inquiries lack SSNs.  Report to Congress Under Sections 318 and 319 of the Fair and Accurate Credit Transactions Act of 2003 at 38 & n. 125 (Fed. Trade Comm'n, Dec. 2004) (the "FTC Report").[5]  The FTC explained that, although CRAs use SSNs to match files, they also use other indicative information and will return a credit report without a match on the SSN if other information matches.

---

[5] This report is available from the FTC's website at http://www.ftc.gov/opa/2004/12/factarpt.shtm (last visited Oct. 6, 2011).

> Because of these problems, the CRAs do not rely exclusively on
> SSNs in their matching procedures. … This leads the CRAs to
> use other identifiers, such as name and address, to aid in
> matching. As discussed above, the CRAs will rely on SSNs that
> do not match if the match on other data elements is strong enough.

Id. at 40 (footnote omitted).

The FTC also noted the same problems with relying on SSN that Trans Union has identified here. (See supra ¶¶ II.26-31.) According to the FTC: "SSN is also subject to error. Errors in SSNs may arise when a consumer does not know his or her number when filling out an application, from illegible handwriting or faulty transcription, or from mistyping the number when entering it into a database." FTC Report at 39. Importantly, the FTC observed, "errors [in SSNs] are not easily detected." Id. In its report to Congress, the FTC recognized that CRAs can use SSNs "for the purposes of data matching," but also acknowledged that using SSNs for this purpose may not be useful because (1) the number "is often missing from consumer credit information" and (2) "errors are common in recording SSNs." FTC Report at 38.

After considering all of this information, as well as weighing the costs and benefits of requiring an exact SSN match, the FTC declined to recommend to Congress that it amend the FCRA to require CRAs to match SSNs when providing credit reports. Id. at 55. Thus, the FTC not only recognized that the FCRA does not require that the SSN of a file match that of the inquiry before returning the file but also concluded that imposing any such requirement was not warranted. The FTC's analysis demonstrates that Trans Union's procedures are reasonable as a matter of law. Accordingly, summary judgment in Trans Union's favor is warranted.

Overall, the record indisputably demonstrates that Trans Union had "reason to believe" that T-Mobile had a permissible purpose to obtain a credit report concerning Plaintiff on April 25, 2009, and thus Trans Union is entitled to summary judgment.

### C.      Count II Should Be Dismissed.

The FCRA requires Trans Union to have reasonable procedures to limit the furnishing of credit reports to situations where it has "reason to believe" that the end user has a permissible purpose.  15 U.S.C. § 1681e(a).  Although Plaintiff's Complaint asserts a § 1681e(a) claim by Count II, it fails to identify the Trans Union procedures which Plaintiff challenges.  Any such challenge would presumably address Trans Union's procedures for forming a "reason to believe" that T-Mobile had a permissible purpose to obtain Plaintiff's credit report on April 25, 2009.  Trans Union is entitled to summary judgment on Count II for two independent reasons.  First, because Trans Union did not violate the FCRA by providing the April 25, 2009, credit report to T-Mobile, Plaintiff cannot challenge Trans Union's procedures under § 1681e.  Second, even if Plaintiff could challenge Trans Union's procedures, those procedures are reasonable as a matter of law.

As a threshold matter, Plaintiff cannot challenge any of Trans Union's procedures in this case because there is no underlying permissible purpose violation and Plaintiff cannot assert a free-standing "reasonable procedures" claim.  Under the FCRA, "a plaintiff bringing a claim that a reporting agency violated the 'reasonable procedures' requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b."  Washington v. CSC Credit Services Inc., 199 F.3d 263, 267 (5th Cir. 2000); see also Hinton v. Trans Union, LLC, 654 F. Supp. 2d 440, 450 (E.D. Va. 2009), aff'd sub nom, Hinton v. Trans Union LLC, 382 F. App'x 256 (4th Cir. 2010) (same); cf. Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001) (citing Washington with approval for the proposition that a plaintiff challenging a CRA's "reasonable procedures" must demonstrate a violation of the underlying FCRA provision with which the "reasonable procedures" are designed to ensure compliance).  Therefore, in the event that this Court grants summary judgment to Trans Union on Count I, Plaintiff's claim for a

20

violation of 15 U.S.C. § 1681e(a) fails as a matter of law and Trans Union is entitled to summary judgment in its favor on Count II.

Second, Count II fails on its merits because Trans Union's procedures to ensure that it only furnishes credit reports for permissible purposes are reasonable as a matter of law.  15 U.S.C. § 1681e(a) identifies the "reasonable procedures" that Trans Union must implement to give itself "reason to believe" that end users have permissible purposes for credit reports.  Trans Union "shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose."  15 U.S.C. § 1681e(a).  As discussed above, there is no dispute that Trans Union obtained the required certification of permissible purpose from T-Mobile and thus complied with the FCRA.  (See supra Part III.A; see also supra ¶¶ II.3-7.)  Many of the cases cited above in the discussion of Plaintiff's § 1681b claim also granted summary judgment in favor of the CRA on claims brought under 15 U.S.C. § 1681e(a).  See Davis, 46 F.Supp.2d at 508 (finding CRA's procedures reasonable and granting judgment in favor of CRA); Hernandez, 2008 WL 4061344, at *9 (same); Enoch, 2007 WL 4106264, at *5-6 (same); Dobson, 828 F.Supp. at 977-78 (same); Anderson, 1991 WL 211627, at *1 (same).

The sufficiency of Trans Union's procedures is also demonstrated by recent guidance provided by the FTC, the agency which enforced the FCRA for four decades and now shares enforcement responsibility with the Consumer Financial Protection Bureau:

> Blanket or individual certification.  Once the CRA obtains a certification from a user (e.g., a creditor) that typically has a permissible purpose for receiving a consumer report, stating that the user will use consumer reports only for permissible purposes, it need not require the user to certify its purpose for each individual report obtained unless there is reason to believe the user may be violating its certification.

40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations at 66 (Fed. Trade Comm'n, July 2011) (footnote omitted).[6] Thus, the FCRA allows Trans Union to rely upon a general, or "blanket," certification of permissible purpose from T-Mobile.

Any § 1681e challenge that Trans Union can only provide a consumer's file if the SSN in the file matches that in the inquiry also fails. Courts that have addressed the specific issue have held that such file-matching procedures are not required by the FCRA. See Crabill, 259 F.3d at 664 ("Trans Union was entitled to program its computer to select any file whose identifiers closely match those contained in the creditor's request for information."); Dobson, 828 F. Supp. 975, 977-78 (rejecting argument that "no file containing a different social security number should ever be produced"). Moreover, the FCRA contains no explicit requirement that Trans Union engage in such SSN matching, and the FTC has expressly declined to recommend that Congress change the law to create such a requirement. FTC Report at 55. Therefore, Trans Union's procedures satisfy § 1681e(a) as a matter of law.

**D. Alternatively, Plaintiff's Claims For Willful Violations Of The FCRA Must Be Dismissed.**

Plaintiff claims not only that Trans Union violated both 15 U.S.C. § 1681b(a) and 15 U.S.C. § 1681e(a), but that Trans Union "willfully" violated the FCRA. A plaintiff who proves a willful violation of the FCRA can recover actual damages, or statutory damages of $100 - $1,000 in lieu of actual damages, as well as punitive damages. 15 U.S.C. § 1681n(a). Plaintiff does not purport to seek any award of actual damages (Compl., ECF No. 1, at 6), and thus seeks statutory and punitive damages from Trans Union for an alleged violation that caused no harm to Plaintiff

---

[6] This report is available from the FTC's website at http://www.ftc.gov/os/statutes/fcrajump.shtml (last visited Oct. 6, 2011).

and that did not prompt even a single phone call by Plaintiff to Trans Union.  (<u>See supra</u> ¶¶ II.2, 35-37.)

For all the reasons described above, Plaintiff's FCRA claims should be dismissed in their entirety.  Alternatively, in the event this Court finds some reason to deny this request, Plaintiff's claims that any alleged violation of the law was willful should be dismissed pursuant to Rule 56.

The U.S. Supreme Court has held that a willful violation of the FCRA can be premised upon not only knowing or intentional conduct, but also upon merely reckless conduct.  <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47 (2007).  The Supreme Court defined reckless conduct as "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  <u>Id</u>. at 68 (citation omitted).

> Thus, a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

<u>Id</u>. at 69.  The analysis in <u>Safeco</u> arose in the context of cases where the defendant sued for an FCRA violation was aware of the statute but premised its business practices upon an interpretation of the law which the Court later determined to be incorrect.  The Court nonetheless held that, although one defendant's interpretation of the law was ultimately incorrect, that interpretation was not so reckless as to give rise to statutory and punitive damages.

In <u>Safeco</u>, therefore, the Supreme Court established that the threshold inquiry for determining if an FCRA violation is reckless, i.e., whether the conduct is in accord with "a reasonable reading of the statute's terms" (even if ultimately an incorrect reading).  551 U.S. at 69.  After holding that the defendant's interpretation of the FCRA was not "objectively unreasonable," the Supreme Court ruled as a matter of law that the defendant's conduct (although violative of the law) did not constitute a willful violation of the statute.  <u>Id</u>. at 70-71.

The Supreme Court expressly rejected as "unsound" the argument that "evidence of subjective bad faith can support a willfulness finding even when the company's reading of the statute is objectively unreasonable." Id. at 70 n. 20.

Following Safeco, federal courts have routinely granted summary judgment to defendants on FCRA willfulness claims after concluding that the defendants' interpretations of the FCRA were "objectively reasonable." See, e.g., Levine v. World Fin. Network Nat'l Bank, 554 F.3d 1314, 1319 (11th Cir. 2009) (upholding grant of summary judgment in favor of credit bureau because bureau's interpretation of the FCRA was "objectively reasonable"); Murray v. New Cingular Wireless Servs., Inc., 523 F.3d 719, 726 (7th Cir. 2008) (applying Safeco to uphold grant of summary judgment in favor of defendant on FCRA claim); Keller v. Macon County Greyhound Park, Inc., 2011 WL 1559555, at *5 (M.D. Ala. Apr. 25, 2011) (granting summary judgment to defendant on claim for willful FCRA violation); Murray v. GMAC Mortg. Corp., 532 F. Supp. 2d 938, 945 (N.D. Ill. 2007) (granting summary judgment because "Defendant's interpretation of the [FCRA] was not objectively unreasonable"), aff'd, 274 F. App'x 489 (7th Cir. 2008) (affirming grant of summary judgment); see also Simonoff v. Kaplan, Inc., 2010 WL 4823597, at *9 (S.D. N.Y. Nov. 29, 2010) (granting motion to dismiss after finding that the defendant's interpretation of the FCRA was "not objectively unreasonable") (emphasis added); King v. MovieTickets.com, Inc., 555 F. Supp. 2d 1339, 1342-43 (S.D. Fla. 2008) (granting motion to dismiss FCRA willfulness claim because Plaintiff could not allege facts to demonstrate a willful violation under Safeco).

The Safeco Court ultimately concluded that, although the defendant's interpretation of the FCRA was wrong and therefore subjected it to liability for a negligent violation, it was not "objectively unreasonable" and thus could not be a reckless or willful violation. Safeco, 551

U.S. at 70.  In doing so, the Court noted that the statutory text did not address the precise

interpretative issue (noting the FCRA provision at issue contained "less-than-pellucid statutory

text"), 551 U.S. at 70.  The Court also noted that the defendant did not have "the benefit of

guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have

warned it away form the view it took."  <u>Safeco</u>, 551 U.S. at 70.

 Under this analysis, Plaintiff cannot prove that Trans Union's release of Plaintiff's credit

report to T-Mobile was "objectively unreasonable," and thus cannot establish a willful violation.

With respect to Trans Union's reliance on T-Mobile's certification of permissible purpose, Trans

Union's actions were not only "objectively reasonable," they indisputably complied with an

express provision of the FCRA, federal courts' interpretations of that provision, as well as FTC

guidance.  (<u>See supra</u> Parts III.A-B.)  To the extent that Plaintiff claims that Trans Union's

decision to provide Plaintiff's credit report to T-Mobile was a willful decision to provide the

incorrect consumer's credit report to T-Mobile, that claim also fails.  (<u>See supra</u> Part III.B.)

 Here, the FCRA provides no explicit guidance on how Trans Union must form its "reason

to believe" what consumer's credit report an end user is requesting.  Therefore, the statute is thus

"less-than-pellucid" on the issue, leaving Trans Union to implement procedures which govern a

multitude of situations for matching a consumer's file with the identifying information provided

in an inquiry.  Moreover, there not only is an absence of authority "that might have warned

[Trans Union] away from the view it took," <u>id</u>., there is appellate court and district court case

law, as well as FTC guidance, which directly supports Trans Union's conduct.  (<u>See Supra</u>, Part

III.B (discussing <u>Crabill</u>, <u>Dobson</u>, and <u>FTC Report</u>).)  Therefore, even if the Court declines to

dismiss Plaintiff's claims as a matter of law, Plaintiff's claims that any violations of the FCRA

were "willful" should be dismissed.

IV.   <u>**CONCLUSION**</u>

WHEREFORE, PREMISES CONSIDERED, Defendant Trans Union LLC, respectfully requests that this Honorable Court: (a) grant Trans Union's Motion for Summary Judgment in its entirety and dismiss the Plaintiff's Complaint with prejudice; or, alternatively, (b) grant Trans Union's Motion for Summary Judgment in part and dismiss Plaintiff's claims for willful violation of the FCRA; and (c) grant Trans Union such other and further relief as the Court deems just.

DATED: October 7, 2011                          Respectfully submitted,


                                                /s/_____
                                                Michael R. Ward
                                                Virginia bar number 41133
                                                Attorney for Trans Union LLC
                                                Morris & Morris, P.C.
                                                P.O. Box 30
                                                Richmond, VA 23218-0030
                                                Phone:  (804) 344-8300
                                                Fax:  (804) 344-8539
                                                mward@morrismorris.com

                                                and

                                                Michael O'Neil (admitted *pro hac vice*)
                                                Albert E. Hartmann (admitted *pro hac vice*)
                                                DLA Piper LLP (US)
                                                203 North LaSalle Street, Suite 1900
                                                Chicago, IL 60601
                                                (312) 368-4000
                                                (312) 236-7516 Fax
                                                michael.oneil@dlapiper.com
                                                albert.hartmann@dlapiper.com

                                                **Attorneys for Defendant Trans Union LLC**

**TRANS UNION'S EXHIBITS IN SUPPORT OF**
**RULE 56 MOTION FOR SUMMARY JUDGMENT**

A.      TransUnion Master Agreement for Consumer Reporting and Ancillary Services between Trans Union LLC and T-Mobile USA, Inc., dated August 26, 2008 (TU 1-20)[7]

B.      Declaration of Janet Lynn Quinn

C.      Declaration of Lynn S. Romanowski

D.      Plaintiff's F.R.C.P. 26(a)(1) Disclosures

---

[7] Although TU 1-20 have been designated as "Confidential" under the terms of the protective order, Trans Union has filed TU 1-20 in the public record and is thus lifting the "Confidential" designation.

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record registered to use the CM/ECF system in this action, as follows:

Leonard Anthony Bennett
lenbennett@cox.net
Susan M. Rotkis
srotkis@clalegal.com
Consumer Litigation Assoc PC
12515 Warwick Blvd, Suite 100
Newport News, VA 23606
(757) 930-3660
(757) 930-3662 Fax
*Counsel for Plaintiff*

I further certify that I will cause a copy of the foregoing document and corresponding NEF by electronic mail on the following non-filing user:  None

/s/_____
Michael R. Ward
Virginia bar number 41133
Attorney for Trans Union LLC
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA 23218-0030
Phone:  (804) 344-8300
Fax:  (804) 344-8539
mward@morrismorris.com